IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00198 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MICHA |
| | ) | TERRAGNA'S MOTION TO |
| vs. | ) | RECONSIDER (DOCUMENT NUMBER |
| | ) | 329) AND DENYING KEVIN |
| KEVIN BRUNN (05); | ) | BRUNN'S SUBSTANTIVE JOINDER |
| MICHA TERRAGNA (06), | ) | (DOCUMENT NUMBER 342) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING MICHA TERRAGNA'S
MOTION TO RECONSIDER (DOCUMENT NUMBER 329) AND
DENYING KEVIN BRUNN'S SUBSTANTIVE JOINDER (DOCUMENT NUMBER 342)

I.    INTRODUCTION

Defendants Micha Terragna and Kevin Brunn filed separate motions to suppress evidence (Docket Nos. 130 and 132), claiming that their Fifth Amendment rights were violated when they were not informed of their Miranda rights before custodial interrogations. On February 7, 2008, this court held an evidentiary hearing on both motions.

On February 19, 2008, the court granted in part and denied in part Brunn's motion and denied Terragna's motion. See Order Granting in Part and Denying in Part Brunn's Motion to Suppress; Order Denying Terragna's Motion to Suppress (Feb. 19, 2008) (Document Number 220). Because there was no dispute that Miranda warnings had not been provided to Brunn and Terragna, this court focused on whether either had been "in custody" when making a statement such that Miranda applied. To the extent

Brunn was questioned in his front yard without Miranda warnings prior to or contemporaneously with the search of his person pursuant to a search warrant, the court suppressed statements he made because he was "in custody" at the time he made those statements. However, the court held that, after the search of his person was completed, Brunn was free to leave and was no longer "in custody." Statements Brunn made after the search of his person was completed were not suppressed, as the court determined that Brunn was no longer "in custody" when those statements were made. The court did not suppress any statement made by Terragna, ruling that those statements were not made while she was "in custody."

On October 10, 2008, Terragna moved for reconsideration of the order denying her motion to suppress (Document Number 329), arguing that the Ninth Circuit's recent decision in United States v. Craighead, 539 F.3d 1073 (9th Cir. 2008), constitutes an intervening change in the law under which her statements must be deemed to have been made while she was "in custody." On October 15, 2008, Brunn filed a substantive joinder, similarly arguing that, under Craighead, the statements he made were also made while he was "in custody." Although Craighead clarified the factors this court is to consider in determining whether a person is "in custody" while being questioned at his or her home, it

does not make a difference here.  Terragna's motion to reconsider and Brunn's joinder therein are therefore denied.

II.      ANALYSIS.

On August 21, 2008, the Ninth Circuit filed its order in Craighead, 539 F.3d 1073, examining whether Craighead was "in custody" when he made certain statements to law enforcement officers during a search of his home and whether Miranda warnings were therefore required.  If Craighead was "in custody" at the time of his in-home interrogation, his Miranda rights were violated.  This court reviewed Craighead within a day or so of its filing, paying particular attention to whether it affected this court's rulings in the present case.  Had this court determined that Craighead might govern this case, the court would have sua sponte requested briefing on the matter.  However, as the court did not so determine, no briefing was requested at the time.

The Ninth Circuit began its analysis in Craighead by reiterating that a suspect who has not formally been taken into police custody may nevertheless be considered "in custody" for purposes of Miranda "if the suspect has been 'deprived of his freedom of action in any significant way.'"  Craighead, 539 F.3d at 1082 (quoting Miranda v. Ariz., 384 U.S. 436, 444 (1966)).  To determine whether a suspect is in custody, courts must examine the "totality of the circumstances surrounding the

interrogation," asking "whether a reasonable person in those circumstances would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" Craighead, 539 F.3d at 1082 (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)).

The Ninth Circuit applied these general principles to an interrogation of a person conducted within his or her own home, noting that such an interrogation may be found to be custodial under certain circumstances. Id. at 1083. The Ninth Circuit recognized that an in-home interrogation presents some analytical challenges because, even if a suspect is told that he or she is free to leave the home, that person may not have anywhere to go. The court also noted that a reasonable person interrogated inside his or her own home may have a different understanding of whether he or she is actually free to terminate the interrogation. Id. At the same time, however, a reasonable person interrogated inside his or her own home may suffer from less compulsion given the familiar surroundings. Id. In other words, a person who feels that he or she has nowhere else to go may also feel freer to assert his or her rights in the home.

The Ninth Circuit therefore focused on "the extent to which the circumstances of the interrogation turned otherwise comfortable and familiar surroundings of the home into a 'police dominated atmosphere.'" Id. (quoting Miranda, 384 U.S. at 445). The court stated that such an analysis "is necessarily fact

4

intensive," id. at 1084 (quoting United States v. Griffen, 7 F.3d 1512, 1518 (10th Cir. 1993)), and noted that the following factors should be considered:

> (1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made.

Id.

The Ninth Circuit determined that Craighead was "in custody" at the time he made his statements in his home. With regard to the first factor--the number of law enforcement personnel and whether they were armed, the Ninth Circuit noted that eight law enforcement officers from three different agencies entered Craighead's home, accompanied by two others, including Craighead's superior. All law enforcement personnel were armed, some of them with unholstered weapons, and some with protective vests. Craighead doubted that the person informing him that he was free to leave spoke on behalf of all three agencies. Under these circumstances, the Ninth Circuit thought the first factor would lead a "reasonable person in Craighead's position [to] feel that his home was dominated by law enforcement agents and that they had come prepared for a confrontation." Id. at 1085.

With regard to the second factor--whether the suspect was at any point restrained, either by physical force or by threats, the Ninth Circuit noted that such restraint may be physical or through threats or intimidation.  Id.  Although Craighead was not handcuffed or physically restrained, he was taken to a back storage room in his house for questioning.  After the door to that room was shut behind him, a detective who was armed and wearing a "raid vest" leaned against the door, blocking the exit.  Under these circumstances, the Ninth Circuit noted that it was objectively reasonable for Craighead to have believed that he was under guard.  Id. at 1086.

With regard to the third factor--whether the suspect was isolated from others, the court noted that the act of removing a suspect from the presence of his or her family, friends, or colleagues weighs in favor of finding that a person is "in custody" in his or her own home.  Family, friends, or colleagues might lend moral support during questioning and might deter a suspect from making inculpatory statements.  Id. at 1087.  Craighead was isolated from everyone in the back room of his house.  His superior, who had come to provide emotional support to Craighead, was barred from the room.  These circumstances supported the conclusion that Craighead was "in custody."  Not only was he isolated, he was not free to invite others to the storage room of his own house.  Id.

With regard to the fourth factor--whether the suspect was told that he was free to leave or terminate the interview, and the context in which the suspect was told, the court noted that such a statement by law enforcement would greatly reduce the chance that a suspect would reasonably believe he or she was in custody. Id. However, the mere recitation of such a statement would not automatically render an interrogation non-custodial. Id. at 1088. Although Craighead was told he could leave, the Ninth Circuit concluded that he could have reasonably believed that he was not free to leave. As outlined above, eight armed officers from three different agencies entered his home, and Craighead thought that the one person who told him that he was free to leave might not speak for all three agencies. This thought was buttressed by his isolation in a back storage room in which an armed detective in a "raid vest" blocked the door exit. The "totality of the circumstances" indicated that Craighead was "in custody" at the time he provided his statements in the back room of his house. Id. at 1089-90.

The Ninth Circuit's decision in Craighead does not justify reconsideration of this court's order denying Brunn and Terragna's motions to suppress statements they made after the search warrants were executed on their persons. In so ruling, this court noted that a "defendant is in custody when, based upon a review of all the pertinent facts, a reasonable innocent person

in such circumstances would conclude that after brief questioning he or she would not be free to leave." Conclusion of Law C (citing United States v. Wauneka, 770 F.2d 1434, 1438 (9th Cir. 1985); accord United States v. Hernandez, 476 F.3d 791, 796 (9th Cir.)). In examining the totality of pertinent facts, this court looked to "'the language used by the officers, the physical characteristics of the place where the question occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt.'" Conclusion of Law D (quoting United States v. Hernandez, 476 F.3d 791, 796 (9th Cir. 2007) (quoting United States v. Butler, 249 F.3d 1094, 1099 (9th Cir. 2001)); accord United States v. Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001). This court's rulings are consistent with Craighead.

      The court suppressed statements made by Brunn during the execution of a search warrant on his person. Brunn was not free to leave before or while he was searched. Any statement made by him before or during that search would have therefore been made while he was "in custody." The court, however, declined to suppress statements made by Brunn long enough after the search that a reasonable person in his position would have known that he was no longer "in custody."

The Ninth Circuit's <u>Craighead</u> decision does not change this court's analysis regarding whether Brunn was "in custody." The officers initially informed Brunn that he was not under arrest and that he would not be in custody when the officers left.  <u>See</u> Finding of Fact I.  Brunn was told that he did not have to stay on the premises while his house was being searched. He was told that he was free to leave or stay so long as he did not interfere with the execution of the search warrant on his house.  <u>See</u> Finding of Fact P, Z.  To the extent there was testimony that Brunn was told otherwise, this court did not find that testimony credible.  <u>See</u> Finding of Fact AA, BB, DD; Conclusion of Law P.  Although ten law enforcement officers went to Brunn's house to execute the search warrant, and although all were armed and some had their weapons out as they approached the house, this "police-dominated atmosphere"--the sole <u>Craighead</u> factor weighing in favor of a finding that Brunn was "in custody"--did not overcome the statements made to Brunn that he was not in custody and would not be in custody when the officers left.  Brunn was a police officer himself.  <u>See</u> Finding of Fact D.  After he was searched, Brunn was reminded that he could leave.  Finding of Fact Z.  Brunn walked over to the carport where his friend, a state sheriff, was located and could provide moral support, indicating that Brunn was not isolated from others who could prevent him from making inculpatory statements.  <u>See</u>

9

Finding of Fact V, AA. Although there was some testimony indicating that Brunn was told to "stay here," this court did not find that testimony credible. See Finding of Fact BB. Nor was Brunn physically restrained. Id. The totality of these circumstances does not overcome the repeated statements to Brunn that he was not in custody and would not be in custody when the officers left. Accordingly, the court denies Brunn's joinder in the motion for reconsideration, as he was not "in custody" at the time he made statements to officers subsequent to the search of his person.

The court also denies Terragna's motion for reconsideration. Unlike Brunn, Terragna did not identify any statement that she made contemporaneously with the search of her person. Instead, Terragna's statements were made well after the search of her person was completed and she was reminded that she was free to leave. See Finding of Fact Z. The Ninth Circuit's Craighead decision does not change this court's conclusion. Although Terragna was subject to a "police-dominated atmosphere" because ten armed law enforcement officers were at her house, the remaining Craighead factors clearly weigh in favor of the conclusion that Terragna was not "in custody" when she made her statements.

Even if Terragna was frisked while her person was being searched, a fact this court did not find, see Findings of Fact N,

W, and X, her statements were made long after that alleged frisking, when her movements were not restrained. See Finding of Fact GG. Terragna was immediately told that she was not under arrest and that she would not be under arrest when law enforcement personnel left her house. See Finding of Fact I. Terragna was allowed to hand her baby over the fence to a neighbor. After she was reminded that she was free to leave, Terragna was allowed to go into the house to get milk for her child. See Finding of Fact EE. At some point in time, the infant was returned to Terragna, and she spent time in her living room, feeding the infant. Terragna freely walked in and out of the house, unescorted by law enforcement personnel Id.

This court recognizes that, until Terragna's person was searched pursuant to a search warrant, she was not free to leave. However, once that search had been completed, she was reminded that she was free to leave. Her subsequent conduct indicates that she was not "in custody" when she later her statements. At the hearing on this motion, Terragna argued that she was nervous being around so many police officers. However, that nervousness is not supported by the record, as Terragna did not testify at the underlying evidentiary hearing about how she was feeling. At most, Special Agent O'Brien testified that Terragna was very talkative. See Finding of Fact FF. However, the court's

impression of that testimony was that Terragna was being friendly with the officers, rather than nervously chatting with them.

At best, only the first <u>Craighead</u> factor weighs in favor of a determination that Terragna was "in custody." Under the totality of the circumstances, and given the factors listed in <u>Craighead</u>, Terragna was not "in custody" when she made her statements to law enforcement officers.

III.     <u>CONCLUSION.</u>

Under the totality of the circumstances, neither Brunn nor Terragna was "in custody" when making the statements to law enforcement officers that this court has declined to suppress. These statements were made well after the searches of their persons were completed and after they were reminded that they were free to leave. Because the factors listed in <u>Craighead</u>, when applied to this case, do not render improper this court's conclusion that neither Brunn nor Terragna was "in custody" at

the time they made the unsuppressed statements, Terragna's motion for reconsideration and Brunn's joinder in that motion are denied.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawaii, October 20, 2008.



    /s/ Susan Oki Mollway
    Susan Oki Mollway
    United States District Judge

United States v. Brunn, et al., Cr. No. 06-00198 SOM; ORDER DENYING MICHA TERRAGNA'S MOTION TO RECONSIDER (DOCUMENT NUMBER 329) AND DENYING KEVIN BRUNN'S SUBSTANTIVE JOINDER (DOCUMENT NUMBER 342)